UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

CHARLES TAYLOR

No. 22 CR 158

Judge Martha M. Pacold

## UNITED STATES' CONSOLIDATED MOTIONS *IN LIMINE*

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/ Paul Schied*
PAUL SCHIED
ALBERT BERRY III
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated:      January 7, 2025

# TABLE OF CONTENTS

I.  Factual Background ................................................................................. 3

II.  Motion to Preclude Argument or Commentary Regarding Constitutional Issues Previously Resolved by the Court .................................................. 4

III. Motion to Admit Portions of a Transcript of Defendant's Prior Guilty Plea and Sentencing Pursuant to Rule 902(4) ......................................... 6

IV.  Motion to Require Parties to Provide Notice Prior to Impeachment Under Fed. R. Evid. 608(B) ........................................................................... 9

V.  Motion to Bar Evidence or Argument Designed to Elicit Jury Nullification ...11

    A.                     Missing                    Witness Argument..........................................................................**Error! Bookmark not defined.**1

    B.  Evidence or Argument by Defendant of the Possible Penalties that He Faces if Convicted ................................................ 1**Error! Bookmark not defined.**

    C.  Argument and Evidence Regarding the Government's Motivation in Investigating and Prosecuting the Case ... 1**Error! Bookmark not defined.**

    D.  Argument or Evidence Concerning Allegations of Governmental Misconduct and Outrageous Government Conduct ..... 1**Error! Bookmark not defined.**

    E.  Argument or Evidence of Defendant's Lawfulness.................................16

    F.  Evidence or Argument by Defendant of Family Circumstances...................17

VI.  Motion to Bar Discovery Requests or Comments Regarding Discovery in the Jury's Presence......................................................**Error! Bookmark not defined.**

VII. Motion to Preclude Argument Defining Reasonable Doubt.........................18

VIII. Motion to Preclude Evidence and Argument about Investigative Steps Not Taken.......................................................................................................20

IX.  Motion to Admit Defendant's Prior Felony Conviction if He Testifies Pursuant to Federal Rule of Evidence 609...............................................................23

X.  Motion to Bring Firearm to Court as Evidence at Trial.............................26

The United States of America, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully moves this Court, *in limine*, for the relief requested below.

## I.    FACTUAL BACKGROUND

Defendant Charles Taylor is charged with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) and 924(e). Dkt. 126. At trial, the government's evidence will show that, on October 10, 2021, defendant was with Percy Walker and Jessica Huff. Defendant was armed with a Taurus PT140, .40 caliber semi-automatic handgun bearing serial number SUK13277. Huff observed defendant with the gun before leaving defendant and Walker and entering a Mariano's located at 2559 West 95th Street in Evergreen Park. Evergreen Park Police Department ("EPPD") officers then responded to a report of a shoplifting at the Mariano's, and a store employee identified Huff as the suspected shoplifter. After running the name that Huff gave them, officers located a black Volkswagen Jetta in the parking lot that was listed as having been used in a prior shoplifting incident involving Huff. Defendant and Walker were sitting in the Jetta, and officers questioned the pair. During that questioning, two officers observed the handle of a gun—the same Taurus .40 caliber—protruding from defendant's waistband. They ordered defendant out of the vehicle, and he fled immediately. While he fled, officers observed defendant drop the gun, which the officers immediately recovered.

3

**MOTIONS IN LIMINE**

II.     **MOTION TO PRECLUDE ARGUMENT OR COMMENTARY REGARDING CONSTITUTIONAL ISSUES PREVIOUSLY RESOLVED BY THE COURT**

On November 17, 2023, the Court denied defendant's motion to suppress the gun recovered in this case and quash arrest, concluding that the recovery of the gun and defendant's arrest were constitutional. *See generally* Dkt. 70. On June 26, 2024, the Court denied defendant's motion to dismiss on due process grounds, concluding that the lack of body-worn camera footage did not violate due process. *See generally* Dkt. 105.

Questions of law, such as the constitutionality of the officers' interaction with defendant and the due process claims brought by defendant, are outside the province of the jury. *See United States v. Cunningham*, 462 F.3d 708, 714 (7th Cir. 2006) ("It is not within the purview of the jury to be deciding questions of law, particularly ones involving [the legality of] wiretap authorizations. This type of issue must be resolved by the judge, not the jury."). Accordingly, defendant should be precluded from arguing, explicitly or implicitly, or making commentary suggesting, that the police illegally approached the defendant or seized the firearm or that his due process rights were violated. *See, e.g., United States v. Tapia*, No. 08 CR 50023, 2008 WL 11411305, at *1 (N.D. Ill. Oct. 15, 2008) (granting government's motion to bar defendant from adducing evidence or arguing to the jury about constitutionality of a search because "the legality of the search is irrelevant to the issues the jury will be charged with deciding at trial"); *see United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) (noting that the reason for a traffic stop was "not relevant to the trial"). Such

argument or commentary would improperly invite jurors to make an improper legal conclusion regarding the propriety of the officers' conduct and to thereby mistakenly believe that they could refuse to consider evidence (or even return a verdict of not guilty) based on that improper conclusion.

If counsel's cross examination or argument should appear to be inviting the jury to consider the issue of the legality or even propriety of the officers' interaction with defendant, the government will ask the Court to instruct the jury that the Court has already ruled that the officers' actions in approaching the defendant and recovering the firearm were proper and did not violate the defendant's rights in any way; and also that this is not an issue for the jury to decide because the Court has already ruled as a matter of law that the officers' actions did not violate defendant's rights.

Similarly, if counsel's cross examination or argument should appear to be suggesting that officers suppressed body-worn camera footage, destroyed body-worn camera footage, or acted in bad faith in any way with regard to the use of body-worn cameras on the night of defendant's arrest, the government will ask the Court to instruct the jury that the Court has already ruled that there is no evidence that the officers acted in bad faith with regard to the body-worn camera footage or that any exculpatory evidence was suppressed by officers. The government will also ask for instruction that this is not an issue for the jury to decide because the Court has already ruled as a matter of law that the officers' actions did not violate due process.

### III.   MOTION TO ADMIT PORTIONS OF A TRANSCRIPT OF DEFENDANT'S PRIOR GUILTY PLEA AND SENTENCING PURSUANT TO RULE 902(4)

On January 15, 2008, defendant pled guilty to the felony of armed home invasion in the Circuit Court of Cook County, Illinois, in case number 06 CR 22614. During the hearing, defendant admitted that he understood that the offense to which he was pleading guilty was a felony. In the absence of a suitable stipulation between the parties, pursuant to Federal Rule of Evidence 902(4), the government seeks to introduce defendant's admissions, as contained in the certified transcript of that hearing to prove that: (1) at the time of the instant offense, defendant was convicted of a crime punishable by a term of imprisonment exceeding one year; and (2) at the time of the instant offense, defendant had knowledge he had been convicted of a crime punishable by a term of imprisonment exceeding one year, two elements of the charged offense.[1] Rule 902(4) states:

> **Certified Copies of Public Records**. A copy of an official record – or copy of a document that was recorded or filed in a public office as authorized by law – if the copy is certified as correct by:
>
> (A) The custodian or another person authorized to make that certification; or
>
> (B) A certificate that complies with Rule 902(1), (2), or (3), a federal statute, or a rule prescribed by the Supreme Court.

Rule 803(8), the exception to the rule against hearsay, regardless of whether the declarant is available, states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (8) **Public Records.** A record or statement of a public office if:

---

[1] The government has copies of several other of defendant's prior felony convictions and may seek to introduce portions of those transcripts as well.

6

(A) it sets out …: (ii) a matter observed while under a legal duty to report … and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Here, the government seeks to introduce portions of a transcript from defendant's plea and sentencing hearing on January 15, 2008, for the felony of armed home invasion and his plea and sentencing hearing on September 27, 1991 for armed robbery. *See* Exs. A, B. During the hearings, prior to pleading guilty, defendant was advised and acknowledged an understanding for the maximum penalties he faced for this conviction. In particular, the following exchanges occurred:

January 15, 2008 Sentencing

THE COURT: Mr. Taylor, in your second case, alleging home invasion, et cetera, I understand you're prepared to plea guilty to Count 2 of that charging document; is that, in fact, your intention?

THE DEFENDANT: Yes, sir.

THE COURT: It's punishable by not less than 6, but not more than 30 years in the Illinois Department of Corrections, followed by 2-year period of parole – 3-year period of parole; do you understand that?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Understanding everything to this point, are you continuing to plead guilty?

THE DEFENDANT: Yes, I am.

*See* Ex A at 3:12-3:21; 5:18-20. The court imposed a 12-year sentence in his armed home invasion case. *Id.* at 13:2-6.

September 27, 1991 Sentencing

> THE COURT: It is charged that you committed an armed robbery on February 11th and again on February 9th by the use of force and threatening the eminent use of force while armed with a dangerous weapon, you took United State's currency from the person and presence of first of Peter Mallaros, and secondly of Donna Dyer on the 19th, both of which violated Chapter 38, Section 182A. Those are Class X offenses which you must be sentenced to a minimum of not less than six years and sentenced up to 30 years in the Illinois Department of Corrections. . . Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You could also be sentenced – you could be fined an amount not to exceed $30,000 on all three charges. The parties, however, have agreed on the sentence of ten years. Do you understand that?
>
> THE DEFENDANT: Yes.

*See* Ex B at 3:8 – 4:8. The court imposed a 12-year sentence in his armed home invasion case. *Id.* at 13:2-6.

Attached to the transcripts are certifications by the court reporter that the transcripts are a "true and accurate transcript of the proceedings" before the court. Ex. A at 18. Pursuant to Rule 803(8) and 902(4), when an authorized person certifies facts asserted in public records and reports, those assertions are admissible under the public records exception of the hearsay rules. *See United States v. Lechuga*, 975 F.2d 397, 399 (7th Cir. 1992) (admitting various court records under Rule 803(8) and 902(4)). In addition, defendant's statements to the court are not hearsay because they are admissions by a party opponent under Rule 801(d)(2)(A).

Accordingly, the Court should allow the government to admit portions of the certified transcripts from defendant's January 15, 2008 and September 27, 1991, plea and sentencings that prove (i) defendant pled guilty to the offense; (ii) defendant

8

acknowledged the maximum penalties for the felony, namely a period of incarceration exceeding one year; and (iii) that defendant was sentenced to a period of incarceration exceeding one year.

## IV. MOTION TO REQUIRE PARTIES TO PROVIDE NOTICE PRIOR TO IMPEACHMENT UNDER FED. R. EVID. 608(B)

The government moves to bar the parties from introducing evidence (including by asking questions on cross examination) under Rule 608(b) except upon prior notice to the Court and the opposing party, and outside the presence of the jury. Rule 608(b) provides that specific instances of past conduct may be inquired into on cross examination if (and only if) they concern the witness' character for truthfulness. By its very nature, impeachment based upon a witness' prior conduct that is not relevant to the matter at issue creates a risk of causing unfair prejudice to an opposing party. First, a party attempting to conduct such impeachment may erroneously believe that such impeachment is appropriate when it is not – the end result being that the impropriety of the impeachment is only discovered after the disparaging impeaching conduct is presented to the jury as part of an attorney's question. Second, even if some conduct may properly fall within the scope of Rule 608(b), counsel may exceed any limitations on the scope to which such matters may be addressed on cross-examination. Third, depending on the nature of the past conduct raised by the examiner, the jury may not able to completely obey the Court's instruction to disregard the contents of an improper question heard by the jury.

For these reasons, and to obviate any risk of unfair prejudice, the government asks that this Court exercise its discretion to preclude the parties form pursuing any

impeachment under Rule 608(b) unless, outside the presence of the jury, the party had made a prior offer of proof concerning the alleged prior conduct. See Fed. R. Evid. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."); *accord United States v. Ferrell,* No. 11 CR 595, 2013 WL 2636108, at *7 (N.D. Ill. June 12, 2013), *aff'd in part*, 816 F.3d 433 (7th Cir. 2015). Further, this Court need not require that the parties divulge the alleged prior conduct prior to cross examination (thereby preserving any strategic value to the examining party); rather, the Court could require each party first notify the Court and the other parties at sidebar of its intent to impeach under Rule 608(b). This procedure would ensure that any alleged prior bad acts are not improperly communicated to the jury before the Court has the opportunity to determine whether such alleged prior bad acts are the subject of proper impeachment under Rule 608(b).

For example, if the defense wishes to delve into specific prior bad acts by government witnesses, and so the Court can make the appropriate rulings, the government requests that defense counsel identify the prior conduct or convictions about which they intend to cross-examine a given witness and demonstrate how the conduct or conviction is probative of truthfulness. This should occur outside the presence of the jury and before a witness testifies at trial, to prevent jury nullification and undue prejudice.

10

## V. MOTION TO BAR EVIDENCE OR ARGUMENT DESIGNED TO ELICIT JURY NULLIFICATION

The government moves this Court to preclude defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. It is improper for a defendant to suggest in any way that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively sanctioned by instructions, but is to be viewed as an aberration under our system." (internal citation, quotation marks omitted)).

Though the government cannot anticipate each form of "jury nullification" argument or evidence defendant might present in this case, the government moves to exclude the potential areas noted below.

### A. Missing Witness Argument

It is within the Court's discretion to prohibit argument concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). Indeed, when the witness is equally available to both sides, the preferred practice is to preclude the missing witness argument rather than to leave the jury free to speculate about a lot of non-evidence. *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). At this point, defendant has not asserted

any witness he intended to call is unavailable. Therefore, the government requests that the Court prohibit defendant from introducing evidence about or arguing that any relevant inference can be drawn from the fact that additional witnesses did not testify at trial.

Alternatively, the government requests the Court require defendant to give notice of his intent to use a missing witness argument before making the argument to the jury so the Court can address any objections. If the Court allows defendant to introduce evidence or make a missing witness argument, the government seeks permission to respond to this argument appropriately. Ordinarily, a prosecutor may reply to an argument by the defense that the absence of some witness counts against the prosecution by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392-93. Once the subject is opened by the defense, it is permissible for the government to respond. *Id*. at 1394. As the Seventh Circuit explained in *Sblendorio*, "[t]he jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the evidence." *Id*. at 1393-94.

## B. Evidence or Argument by Defendant of the Possible Penalties that He Faces if Convicted

The government moves the Court to preclude defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties faced if convicted. The Seventh Circuit's Pattern Criminal Jury Instructions include an instruction specifying, "In deciding your verdict, you should not consider the possible punishment for the defendant. If you decide that the government has proved the

12

defendant guilty beyond a reasonable doubt, then it will be my job to decide on the appropriate punishment." Pattern Crim. Jury Instructions 4.08 (2023 ed.).

Argument and evidence concerning punishment are improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same). Mention of the potential penalties faced by defendant only would serve the improper purpose of jury nullification. *See, e.g.*, *United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.") (quotation omitted).

In particular, here, defendant is subject to a mandatory minimum sentence of 15 years' imprisonment. This Court should preclude defendant from introducing evidence, making argument, or otherwise mentioning the penalty that he faces, including any fines.

## C. Argument and Evidence Regarding the Government's Motivation in Investigating and Prosecuting the Case

The government moves to preclude evidence or argument by defense regarding the government's and agents' motivations for investigating or prosecuting this case. Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus, excluded from trial. *See United States v. Johnson*, 605 F.2d 1025,

1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *United States v. Clay*, 618 F.3d 946, 956 (8th Cir. 2010) ("[S]elective prosecution of a criminal defendant is not an issue for the jury to decide.").

Further, the government moves to preclude the defense from arguing or eliciting evidence regarding the mental states, subjective intentions, or motivations, of the investigating officers and agents. It is well settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such evidence was irrelevant").

Accordingly, the government moves to preclude evidence or argument by the defense regarding the government's and agents' motivations for investigating or prosecuting the case.

### D. Argument or Evidence Concerning Allegations of Governmental Misconduct and Outrageous Government Conduct

The government moves to exclude evidence or argument by counsel of "outrageous government conduct." The Seventh Circuit repeatedly has held that "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) (citation omitted); *see also United States v. Sherman*, 268 F.3d 539, 549-550 (7th Cir. 2001); *United States v. Boyd*, 55 F.3d

14

239, 241-42 (7th Cir. 1995) ("'[O]utrageous governmental misconduct' is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort."). Furthermore, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of government misconduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issue other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. In the face of this tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. 1991). *See also United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation").

15

Accordingly, the defendant should be precluded from attempting to defend this case by attacking the propriety of the government's investigation.

### E.    Argument or Evidence of Defendant's Lawfulness

The government moves to preclude defendant from presenting evidence of, or making reference to, his lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Rule 405(a).[2]

In an effort to distract the jury from the charges at issue, defendant may seek to admit evidence and testimony that, on prior occasions, he acted in a lawful manner. Or he may argue that because he performed good acts during his life, he could not have committed the charged offenses. But "[e]vidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment."). Thus, any evidence or argument regarding defendant's alleged good acts or non-corrupt conduct is irrelevant and should be excluded.

---

[2] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

### F.    Evidence or Argument by Defendant of Family Circumstances

The government respectfully moves this Court to preclude evidence and argument regarding defendant's family needs, including any argument or evidence designed to imply a motive or excuse for defendants' criminal conduct, or to invoke sympathies regarding the impact of a conviction upon defendant's family (for example, that defendant has a child and may be the primary custodial parent).

Such evidence is irrelevant to any factual issues before the jury, is designed for no purpose other than to invoke improper appeals for jury nullification, and should be excluded. *See United States v. Rainone,* 2013 WL 389004 at *1 (N.D. Ill. Jan. 31, 2013) (precluding evidence regarding a defendant's family that is intended to invoke sympathy); *United States v. Henderson*, 2012 WL 698796, at *2 (N.D. Ill. Mar. 2, 2012) ("Argument or evidence relating a defendant's family needs is not admissible to infer a motive or an excuse for [a] defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon a defendant's family."); *United States v. Shields*, 1991 WL 236492 at *4 (N.D. Ill. August 13, 1991) (granting motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member").

## VI.   MOTION TO BAR DISCOVERY REQUESTS OR COMMENTS REGARDING DISCOVERY IN THE JURY'S PRESENCE

The government moves this Court to preclude the parties from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests in front of the jury may distract the jury or create the impression that one

side has suppressed information as a means of seeking an unfair advantage. *See, e.g.*, *United States v. Gray*, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury); *see also Thompson v. Glenmede Trust Co.*, No. Civ. 92–5233, 1996 WL 529693 (E.D. Pa. Sept. 17, 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

As such, the government asks this Court to prohibit either party from raising discovery issues in the presence of the jury. The appropriate time to raise such issues would be at a sidebar or while the jury is not in the courtroom.

## VII.  MOTION TO PRECLUDE ARGUMENT DEFINING REASONABLE DOUBT

The government moves to preclude counsel from attempting to define reasonable doubt during any argument presented to the jury. The Seventh Circuit has clearly and consistently held that "reasonable doubt" is a term that should not be defined by the trial court or counsel. *See United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) ("Thus, the court below should not have allowed [the defendant's] counsel to explain to the jury his understanding of reasonable doubt."); *United States v. Langer*, 962 F.2d 592, 600 (7th Cir. 1992) ("It has been, and continues to be, our opinion that any use of an instruction defining reasonable doubt presents a situation equivalent to playing with fire." (internal quotation marks and citation omitted)); *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir. 1997) ("It is well established in this Circuit, however, that neither trial courts nor counsel should attempt to define

18

'reasonable doubt' for the jury."). In fact, the Seventh Circuit's Pattern Criminal Jury Instructions have forbidden attempts to define reasonable doubt since before *Glass* was decided over 30 years ago. *See Glass*, 846 F.2d at 387; *see also* THE WILLIAM J. BAUER PATTERN CRIMINAL JURY INSTRUCTIONS (2023), 1.04 – Definition of Reasonable Doubt, cmt.

It is equally inappropriate to define reasonable doubt by comparing the burden to the preponderance standard in a civil case. This type of comparison has the potential to lead to jury confusion that the prohibition against defining reasonable doubt seeks to avoid. *Cf. Glass*, 846 F.2d at 387 ("Trial counsel may argue that the government has the burden of proving the defendant's guilt 'beyond a reasonable doubt,' but *they may not attempt to define 'reasonable doubt.'*" (emphasis in original)). If defendant is allowed to say that reasonable doubt is a higher standard than by a preponderance, he will necessarily need to explain what the preponderance standard is for that comparison to have any meaning. And that will only cause the jurors to ask key questions that cannot be answered: How much higher than the preponderance standard? Is 75% confidence enough? What about 90%? The need to avoid even opening the door to these inevitable questions is exactly why the Seventh Circuit has observed that "reasonable doubt" must speak for itself, as jurors know what is "reasonable" and are quite familiar with the meaning of "doubt." *Glass*, 846 F.2d at 387. Indeed, Judge Bauer provided some additional analysis on this point relatively recently:

> Attempts at defining reasonable doubt have always occasioned problems. Both "reasonable" and "doubt" are words in common usage

and are constantly used in the language of law. No matter how glib the speaker, it is necessary to use other words that require further definition in trying to refine the terms "reasonable" or "doubt." The language used by this learned trial judge makes the point clearly.

Illinois Pattern Instructions and the Seventh Circuit Criminal Instructions make this point emphatically. Judges and lawyers must accept the fact that we select jurors who presume to be reasonable and who understand through years of normal living what is meant by "doubt."

*Adorno v. Melvin*, 876 F.3d 917, 922 (7th Cir. 2017) (Bauer, J., concurring); *but see*

*United States v. Alt*, 58 F.4th 910, 920-24 (7th Cir. 2023) (Kirsch, J., concurring) (noting that the Seventh Circuit "has a rigid rule, which has developed over time, that strictly prohibits district judges and the parties from ever defining reasonable doubt for a jury," but taking the position that "[the Seventh Circuit] should join the other circuits that trust district judges with the discretion to define the phrase in the appropriate circumstances.").

Accordingly, the Court should prohibit any attempt to define or explain the meaning of "reasonable doubt" by defendant.

## VIII. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT INVESTIGATIVE STEPS NOT TAKEN

The government expects defendant to raise questions on cross-examination about investigative steps not taken. As a general matter, "[t]he district court retains wide latitude in limiting the extent and scope of cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). It is well within a district court's discretion to

preclude defendant's counsel from questioning witnesses about investigative steps not taken. *See United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition."). A defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when, as here, the defendant has not made any connection between an allegedly shoddy or slanted investigation and any evidence introduced at trial or a specific defense. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

In *Robbins*, the defendant argued that the district court abused its discretion in limiting cross-examination of an agent "about the extent of the investigation," specifically sustaining an objection to defense counsel's question whether the agent "investigated the length of time that [a co-defendant] and Gordon Robbins had known each other." 197 F.3d at 845. In particular, the district court ruled:

> [I]t is not my intention to allow this trial to become a trial of the investigation. And it is my intention that the jury make its decision based on evidence actually presented rather than the—than speculation about the possible existence of other evidence that might have been developed if the investigation had been carried out in some other way.

*Id.* (citation omitted; alteration in original). On appeal, Robbins argued that the "quality and thoroughness of the investigation by law enforcement agents was an appropriate area of cross-examination," whereas the government contended that

21

defendants simply intended to "impugn the thoroughness of that investigation in order to demonstrate that people other than the defendants were responsible for the crime and that law enforcement was either aware of, or ignored, evidence to that effect." *Id.* The Seventh Circuit found no abuse of discretion. While noting the district court's perception that the disputed line-of-questioning might confuse the jury and cause it to speculate about evidence not before the jury, which the Seventh Circuit deemed "valid reason[s]," it further noted the "marginal relevance" of the information. *Robbins*, 197 F.3d at 845. In the same way here, any line-of-questioning intended to try the investigation carries "marginal relevance" and merely works to confuse the jury and imply that additional evidence exists that has not been presented to the jury. Such evidence should be excluded.

Evidence elicited to support a broad claim that the government's investigation of the case was sloppy or inadequate is also irrelevant. The question for the jury is not to determine whether the government's investigation was good or bad; it is whether the defendant is guilty or not guilty. *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (steps that the government had not taken during an investigation was irrelevant and noting that "the jury would not be called upon to determine whether the government's investigation had been good or bad."). Applied here, general allegations that the investigating agencies and agents could have done things differently are inadmissible and irrelevant.

Furthermore, even if evidence of investigative steps not taken has some minimal probative value, the evidence should nonetheless be barred under Rule 403

22

because of the danger of unfair prejudice and jury confusion. *United States v. Patrick,* 248 F.3d 11, 23 (1st Cir. 2001), *cert. denied,* 534 U.S. 1043 (2001) *and* 535 U.S. 910 (2002) ("Such speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially outweighed' the evidence's probative value."); *see also Zaccaria,* 240 F.3d at 81 ("Testimony about the government's non-administration of polygraph examinations would be apt to spark an unwarranted and profoundly prejudicial inference that the Secret Service agents believed the test results would be harmful to their case . . . . The substantial likelihood of unfair prejudice associated with this line of questioning, combined with the speculative nature of the appellant's bias theory, convinces us that foreclosing the inquiry entailed no abuse of discretion.").

The Evergreen Park Police Department is not on trial. Without a reasonable and specific connection to the evidence introduced at trial, as opposed to general claims that the agents and officers could have done things differently, any line of questioning intended to put the investigation on trial should be excluded.

## IX. MOTION TO ADMIT DEFENDANT'S PRIOR FELONY CONVICTIONS IF HE TESTIFIES PURSUANT TO FEDERAL RULE OF EVIDENCE 609

The government respectfully moves this Court to allow the admission of defendant's August 2012 conviction for felon in possession of a firearm, for which defendant was sentenced to 17 years' imprisonment.

In the event that defendant testifies, his credibility will be a central issue at trial. Defendant may dispute that he unlawfully possessed the firearm as charged and the other witnesses' versions of events, or he may give some other explanation for why he should be acquitted. If defendant testifies at trial, the government should be permitted to cross examine him on his most recent prior felony conviction for purposes of attacking his character for truthfulness under Fed. R. Evid. 609(a)(1)(B). The importance of defendant's testimony and the centrality of his credibility outweigh any prejudicial effect and permit proper impeachment.

Federal Rule of Evidence 609 governs the admissibility of criminal convictions for impeachment purposes. In general, "evidence that an accused has been convicted of a crime punishable by death or imprisonment in excess of one year 'shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.'" *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting Fed. R. Evid. 609). In evaluating whether a conviction satisfies this requirement, a trial court should consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's testimony; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *Id.*; *see also United States v. Montgomery*, 390 F.3d 1013, 1016 (7th Cir. 2004). These factors are merely a guide to the district court's exercise of its wide discretion. *Montgomery*, 390 F.3d at 1015. Here, the factors weigh in favor of allowing impeachment on defendant's prior convictions.

24

As to the first prong, impeachment value, the Seventh Circuit has recognized that "even if some of the [above set out] factors were neutral or favored exclusion, the central role of [the defendant's] testimony and the importance of his credibility strongly favored the admission of his prior convictions." *Montgomery*, 390 F.3d at 1016. Thus, defendant's prior conviction has relevant impeachment value simply because it is probative of credibility even if it does not expressly involve dishonesty. *See United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) ("[A] prior felony need not have involved inherent dishonesty to be probative and admissible under Federal Rule of Evidence 609(1)(1)."); *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992) ("The idea underlying Rule 609 . . . is that criminals are more likely to testify untruthfully.").

Regarding the second factor, while defendant's most recent conviction occurred several years ago, defendant does not have a long record of law-abiding conduct in the community during the intervening time. Rather, due to the seriousness of his prior convictions, defendant was sentenced to 17 years' imprisonment. Less than one year after he was released on parole, he was arrested in connection with this case.

As to the third prong, the conviction is similar to the charged crime. Any prejudice from admission of the conviction is greatly diminished by the fact that the fact that defendant is a felon is an element of the charged offense. As to prongs four and five, defendant's credibility, should he testify, will be central to the determination of guilt. If defendant takes the stand, he will almost certainly contest the anticipated testimony of the law enforcement officers and lay witnesses and disavow any

ownership of and knowledge of the firearm. Resolving such conflicting testimony will thus be "the crux of the case." *See Montgomery*, 390 F.3d at 1015-1016 (recognizing that defendant's credibility was central and impeachment with prior drug conviction was proper); *see also Nururdin*, 8 F.3d at 1192 (four prior felony convictions permitted to impeach defendant where "defendant and the officers offered conflicting accounts of the events leading to defendant's arrest"). Given the central role of defendant's potential testimony, the jury should have full and fair information in order to evaluate defendant's credibility. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997) (stating "given the importance of the credibility issue in this case, evidence of the earlier conviction ought to be admitted").

Thus, the Rule 609 analysis weighs in favor of admitting defendant's most recent conviction. After balancing the factors, the Court should conclude that on balance, those factors weigh in favor of permitting the government to impeach defendant with his prior felony conviction.

To minimize any risk of unfair prejudice, the government will limit its inquiry to only the existence of defendant's most recent felony conviction, the date of conviction and sentence, and the length of defendant's sentence, without introducing the specific nature of the underlying misconduct. The government will also request a proper limiting instruction from the Court. *See United States v. Toliver*, 374 F. App'x 655, 658 (7th Cir. 2010) (noting that "the prejudicial effect was lessened because the government confined its inquiry to the type and time of conviction and the court gave the jury a limiting instruction").

**X.     MOTION TO BRING FIREARM TO COURT AS EVIDENCE AT TRIAL**

In the course of presenting its evidence, the government intends to bring the firearm that defendant is charged with into Court. The government understands that, in recent cases, the United States Marshals Service has requested that the trial court issue an order permitting that the firearms be brought into the Dirksen Federal Building, and that the court's order include language stating that: "The firearms shall be rendered safe, inoperable, and unable to discharge. The United States Marshals Service may impose any restriction to ensure that the firearms are rendered safe." If this motion is granted, the government will prepare a draft order that can be presented to the United States Marshals Service so that the firearm and related ammunition can be brough to Court and presented as evidence.

## CONCLUSION

For the reasons set forth above, the government respectfully asks the Court to grant its motions *in limine*.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By:     */s/ Paul Schied*
PAUL SCHIED
ALBERT BERRY III
Assistants United States Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604

Dated:     January 7, 2025